**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY DORAN,
                    *Plaintiff-Appellant,*

v.

7-ELEVEN, INC., d/b/a 7-ELEVEN;
SOUTHLAND CORP.,
                    *Defendants-Appellees.*

No. 05-56439

D.C. No.
CV-04-01125-JVS

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
April 16, 2007—Pasadena, California

Filed November 9, 2007

Before: Jerome Farris and Ronald M. Gould, Circuit Judges,
and Kevin Thomas Duffy,* District Judge.

Per Curiam Opinion;
Dissent by Judge Duffy

---

*The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

14761

**COUNSEL**

Lynn Hubbard, III and Scottlynn J. Hubbard, IV, Law Offices of Lynn Hubbard, Chico, California, for plaintiff-appellant Jerry Doran.

Scott J. Ferrell, Julie R. Trotter, and Melinda Evans, Call, Jensen & Ferrell, Newport Beach, California, for defendants-appellees 7-Eleven, Inc. and Southland Corp.

**OPINION**

PER CURIAM:

We review an order of the district court granting summary judgment to 7-Eleven, Inc. in Jerry Doran's suit under the Americans With Disabilities Act ("ADA"). We affirm the district court's summary judgment on certain alleged ADA violations Doran encountered or of which he had personal knowledge. However, because the district court erred in concluding that Doran did not have standing to challenge other barriers related to his disability and identified in his expert's site inspection, we partially vacate the district court's order granting summary judgment, and we remand for further proceedings.

**I**

Doran is a paraplegic who uses a wheelchair for mobility and travels in a wheelchair-accessible minivan. Doran lives in Cottonwood, California, but has on several occasions visited the 7-Eleven store on North Harbor Boulevard in Anaheim, California. This 7-Eleven store is about 550 miles from his home. In September 2004, Doran filed suit in the district court, alleging that the North Harbor 7-Eleven store contained barriers that denied him full and equal access to the store, that he had personally encountered barriers at the store, and that the barriers deterred him from visiting the store. He requested injunctive relief under Title III of the ADA and injunctive relief and monetary damages under California law.

In a deposition taken on May 19, 2005, Doran testified that he had encountered or had knowledge of nine alleged barriers

at the 7-Eleven store: (1) that there was no van-accessible parking nor any sign denoting such parking; (2) that the striping outlining the disabled parking space was faded; (3) that there was no sign designating the location of the wheelchair ramp; (4) that the wheelchair ramp was too steep; (5) that the store aisles were too narrow; (6) that the entry mat obstructed entry to the store; (7) that disabled patrons were denied access to the employees-only restroom; (8) that the floor space was obstructed by merchandise; and (9) that there were no directional signs indicating the nearest accessible store entrance.

On June 23, 2005, the magistrate judge issued a discovery order allowing Doran to conduct a site inspection of the store but limiting the inspection to barriers that Doran testified he had encountered or knew about but did not personally encounter. The district court denied Doran's motion for review of the magistrate judge's ruling. Despite the limited scope of the discovery order, Doran's expert inspected the store and identified barriers, beyond those Doran identified in his deposition, that would potentially impact mobility-impaired individuals. The expert reported that, among other things, the cashier's counter and ATM were too high, the condiment counter required too long of a reach, and the accessible parking spaces were too sloped.

The district court granted summary judgment to 7-Eleven on all of Doran's ADA claims. The court held that Doran did not have standing to challenge the barriers first identified in the expert report because Doran neither encountered nor had personal knowledge of those barriers. As to the nine barriers that Doran testified he had encountered or had known about, the district court held either that 7-Eleven had already removed them or that Doran had failed to provide any evidence that the alleged barriers violated the ADA. As specifically relevant to this appeal, the district court held that (1) Doran produced no evidence that the store aisles were too narrow under the ADA Accessibility Guidelines or that 7-Eleven maintained an aisle-width policy that violated the ADA and

(2) excluding disabled patrons from the store's employees-only restroom did not violate the ADA. After granting summary judgment to 7-Eleven on Doran's federal claims, the district court declined to exercise supplemental jurisdiction over Doran's state law claims and dismissed them without prejudice.

## II

Both parties raise standing issues. 7-Eleven argues that Doran cannot establish that the North Harbor 7-Eleven store poses an immediate threat of harm to him because it is more than 500 miles away from his home and that Doran therefore lacks standing to sue concerning any of the store's barriers. Doran, on the other hand, argues that a disabled person has standing to challenge all of the barriers related to his disability in a place of public accommodation, not just those he had encountered or those of which he had personal knowledge.[1]

The doctrine of standing is based both on prudential concerns and on constitutional limitations on the jurisdiction of the federal courts. *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To determine whether a dispute presents a case or controversy sufficient to give us jurisdiction under Article III of the Constitution, we apply a three-element test formulated by the Supreme Court:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between

---

[1]The existence of standing is a question of law that we review de novo. *Mortensen v. County of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004). We may affirm summary judgment on any ground supported by the record. *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy*, 383 F.3d 1082, 1086 (9th Cir. 2004).

the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, and footnote omitted). The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits "are the primary method of obtaining compliance with the Act." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972); *see also* 42 U.S.C. § 12188(a) (providing private right of action for injunctive relief against public accommodations that violate the ADA).

We previously addressed the injury-in-fact prong of the Article III standing test in another ADA case in which Doran was the plaintiff: *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002). In that case, Doran brought suit challenging architectural barriers in a Holiday Foods grocery store in Paradise, California that was 70 miles from his home, but near the home of his grandmother who he visited frequently. *Id.* at 1135. Before filing suit, Doran had visited the Paradise Holiday Foods only twice. *Id.* at 1136. During his first visit, which occurred outside the relevant statute of limitations period, Doran personally encountered architectural barriers. *Id.* at 1135. During Doran's second visit, because of the barriers in the store, he had to wait in the parking lot while his companion went into the store on his behalf. *Id.* at 1136. Doran's second trip to the store occurred within the limitations period. *Id.* But because Doran's personal encounter with the barriers had occurred outside the limitations period, one of the questions before us was whether he had suffered an injury in fact within the limitations period sufficient to give him standing. *Id.* at 1137.

As to *Lujan*'s requirement that an injury be concrete and particularized, we held "that in stating that he is currently

deterred from attempting to gain access to the Paradise store, Doran has stated sufficient facts to show concrete, particularized injury." *Id.* at 1137-38. As to *Lujan*'s requirement that a plaintiff's injury be actual or imminent, we held

> that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered "actual injury." Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers "imminent injury."

*Id.* at 1138.

## A

As noted above, 7-Eleven argues that Doran lacks constitutional standing to challenge any of the alleged barriers in the North Harbor 7-Eleven because the store is so far away from his home.

However, Doran has suffered an injury that is concrete and particularized because he alleged that he personally suffered discrimination as a result of the barriers in place during his visits to 7-Eleven and that those barriers have deterred him from continuing to patronize the store. *See Pickern*, 293 F.3d at 1137-38; *see also Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1079 (D. Haw. 2000) ("Plaintiff's desire to patronize Defendant's restaurant free from discrimination is clearly a cognizable interest for the purposes of standing.").

[1] As to whether Doran's injury is actual or imminent, Doran alleged that he had visited the 7-Eleven store on ten to twenty prior occasions, that he is currently deterred from visiting the store because of its accessibility barriers, that the store is conveniently located near his favorite fast food restaurant in Anaheim, and that he plans to visit Anaheim at least

once a year on his annual trips to Disneyland. Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent. *Pickern*, 293 F.3d at 1138; *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005) (holding that a plaintiff suffered actual and imminent injury when he alleged (1) that he visited an accommodation in the past; (2) that he was currently deterred from returning to the accommodation because of ADA violations; and (3) that he would return if the ADA violations were remedied); *Parr*, 96 F. Supp. 2d at 1079 (noting that past patronage plus a sincere intent to return renders an injury actual or imminent); *see also Disabled Ams. for Equal Access, Inc. v. Ferries del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (granting standing to an ADA plaintiff who had visited a cruise ship on three previous occasions and averred an intent to do so again at some nonspecific future time). Notwithstanding the distance between Doran's home and the 7-Eleven, there is an actual or imminent threat that, during his planned future visits to Anaheim, Doran will suffer harm as a result of the alleged barriers.

**[2]** We hold that Doran has suffered an injury in fact that is concrete, particularized, actual, and imminent. Doran therefore has constitutional standing to bring his suit challenging accessibility barriers in the North Harbor 7-Eleven store.

## B

We next address Doran's argument that the district court erred in ruling that he had standing to challenge only those barriers that he had encountered or about which he had personal knowledge.

It is of signal importance that the parties do not dispute that Doran personally encountered or had personal knowledge of nine barriers to accessing the North Harbor 7-Eleven store in

his wheelchair. We concluded above that Doran's encounters with and knowledge of those barriers gave him Article III standing at the time he filed his complaint. *See Lujan*, 504 U.S. at 560; *Pickern*, 293 F.3d at 1138. This standing gets him inside the courthouse door and brings his Article III case forward for our judicial evaluation.[2]

[3] There remains a question, however, about the scope of barriers that Doran may challenge. This question requires us to consider the precise nature and scope of the injury that Doran and similarly situated plaintiffs have suffered when they encounter what they allege to be architectural barriers violative of the ADA, both in the context of Article III's injury-in-fact requirement and in the context of the ADA itself. As we discussed in part A above, Doran encountered several barriers to accessing the North Harbor 7-Eleven in his wheelchair, and these barriers deterred him from attempting to enter the store again. This deterrent effect in turn prevented Doran from discovering what other access barriers might exist within the store that he had not encountered on his previous visits. In other words, the reason that he did not know the full scope of 7-Eleven's ADA violations when he filed his complaint is that the violations he *did* know about deterred him from conducting further first-hand investigation of the store's accessibility. Where this deterrence itself has been identified

---

[2]The dissent contends that our opinion would "preempt the Constitution" by "confer[ring] standing [on ADA plaintiffs] . . . for things that did not injure" them. However, the above discussion with respect to Doran makes clear that it is the access barriers that the ADA plaintiff actually encountered or about which he had personal knowledge that "confer" standing on him under Article III. Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III to bring his claim for injunctive relief forward. *See Lujan*, 504 U.S. at 560-61. The only remaining question is one of scope: namely, what particular alleged ADA violations he may include in that claim for injunctive relief.

as the injury conferring standing to sue on an ADA plaintiff, *see Pickern*, 293 F.3d at 1137-38, it would be ironic if not perverse to charge that the natural consequence of this deterrence, the inability to personally discover additional facts about the defendant's violations, would defeat that plaintiff's standing to challenge other violations at the same location that subsequently come to light. This, however, is the crux of 7-Eleven's position.

**[4]** However, it is also misleading to conceptualize each separate architectural barrier inhibiting a disabled person's access to a public accommodation as a separate injury that must satisfy the requirements of Article III. Doran suffered "discrimination" within the meaning of Title III of the ADA, as well as a legally cognizable injury for purposes of Article III standing, the first time that he encountered architectural barriers at the North Harbor 7-Eleven. The relevant section of the ADA provides that "discriminat[ion] . . . on the basis of disability" includes "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182. While 7-Eleven did remove some of the architectural barriers at the North Harbor location about which Doran had complained, others remained in place that would have interfered with his access as a wheelchair user, as evidenced by the site inspection of Doran's expert. Thus the discrimination against Doran, and the corresponding Article III injury of deterrence from visiting the store, continued even after the violations he initially listed were corrected. Although he is aware of this fact because his expert had an opportunity to inspect the location, many disabled individuals will not have this chance and so, under the district court's view, would have uncertainty about whether the list of access barriers they perchance encountered or learned about before being deterred from entry is exhaustive or whether other, potentially dangerous obstacles to a person with their disability remain in place, only to be encountered when the disabled persons return to the site after the "successful" conclusion of their suit. Such uncertainty is itself an actual, concrete and particularized

injury under the deterrence framework of standing articulated in *Pickern*, for when a disabled individual knows that a facility is noncompliant with the ADA in at least some respects but does not know the full extent of the noncompliance, he or she is likely to be deterred from returning to that facility, even if some of the violations are corrected, until he or she can get more information about the extent of the violations. This presents a real and concrete burden for a disabled person, especially when unknown violations may pose safety hazards to that individual.

[5] Reinforcing that an ADA plaintiff has standing because of deterrence from returning in the face of uncertainty, it is prudent to eliminate that uncertainty through the judicial device of discovery, thus allowing the plaintiff to obtain by formal means the information about the scope of the defendant's violations that he or she was unable to ascertain personally because of those same violations. This course is consistent with Constitutional requirements, for we have been instructed to take a broad view of Article III standing in civil rights cases where private rights of action are the primary means of enforcing the statute. *See Trafficante*, 409 U.S. at 209. Indeed, the enforcement scheme of Title III of the ADA would be severely undermined if we were to adopt the piecemeal approach to standing advocated by 7-Eleven. The statute provides that where an individual, like Doran, has suffered discrimination in the form of a refusal to remove architectural barriers, he may seek injunctive relief including "an order to alter facilities to make such facilities readily accessible . . . and usable." 42 U.S.C. § 12188(a)(2). Such injunctive relief could not be crafted, however, if the parties had not been allowed to determine through discovery precisely what barriers prevented the facility in question from being "readily accessible to and usable by" Doran. We therefore hold that where a disabled person has Article III standing to bring a claim for injunctive relief under the ADA because of at least one statutory violation of which he or she has knowledge and which deters access to a place of public accommodation, he

or she may conduct discovery to determine what, if any, other barriers affecting his or her disability existed at the time he or she brought the claim. This list of barriers would then in total constitute the factual underpinnings of a single legal injury, namely, the failure to remove architectural barriers in violation of the ADA, which failure actually harmed the disabled person by deterring that disabled person from visiting a facility that otherwise would have been visited at a definite future time, yielding Article III standing. *See Pickern*, 293 F.3d at 1138.

**[6]** This question regarding the breadth of Doran's right to sue also implicates the prudential aspects of the standing doctrine. *See Bennett*, 520 U.S. at 164; *Warth*, 422 U.S. at 499; *Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1135 (E.D. Cal. 2006). "[P]rudential standing . . . embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). These limits include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

In *Pickern*, in the course of holding that Doran's deterrence from visiting the Paradise Holiday Foods was an injury in fact, we stated our agreement with the Eighth Circuit's holding in *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000). *Pickern*, 293 F.3d at 1138. In *Steger*, the Eighth Circuit directly addressed the scope of barriers an ADA plaintiff could challenge. In that case, a blind plaintiff had entered the defendant's office building one time before filing an ADA suit. *Steger*, 228 F.3d at 893. During that visit, the plaintiff entered the common area of the building to access the men's restroom, but he was unable to find the restroom because the building's signage did not comply with the ADA. *Id.* The

plaintiff filed suit, challenging all of the ADA violations in the building, both related and unrelated to his disability of blindness. *Id.*

The Eighth Circuit held that the plaintiff lacked standing to challenge the ADA violations unrelated to his particular disability. *Id.* However, the court did not limit the blind plaintiff's standing to only the signage barrier that he had personally encountered. *See id.* at 893-94. The plaintiff's expert presented evidence that the building contained many ADA violations that could injure blind persons. *Id.* at 893. The Eighth Circuit observed that a rule limiting the plaintiff's standing to the signage barrier he personally encountered and forbidding the plaintiff from challenging other barriers related to his disability would result in "piecemeal compliance" with the ADA. *Id.* at 894. The court reasoned that "[t]o compel a building's ADA compliance, numerous blind plaintiffs, each injured by a different barrier, would have to seek injunctive relief as to the particular barrier encountered until all barriers had been removed." *Id.* The court therefore concluded that the blind plaintiff had standing to seek relief for any ADA violation in the defendant's building "affecting his specific disability." *Id.*

Though the Eighth Circuit in *Steger* couched its opinion in terms of Article III's irreducible requirement of standing, we think the more compelling elements of the *Steger* analysis involve considerations relevant to prudential standing. In the ADA context, constitutional limits on standing ensure that we do not adjudicate a case where a plaintiff does not have an actual or imminent, concrete injury, caused by the discrimination challenged in the suit, which is redressable by judicial decision. Here, as in *Steger*, the requirements of constitutional standing were met where the plaintiff encountered one barrier related to his disability and, because of that barrier and his attendant inability fully to access the facility, was unable to determine what other barriers might also obstruct his access and so was deterred from attempting to enter the facility

again. Prudential limits on standing, by contrast, ensure that we do not "decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth*, 422 U.S. at 500.

In this case, Doran seeks to cure the North Harbor 7-Eleven store of all ADA violations that impede his full enjoyment of the facility as a wheelchair user. Because Doran challenges only those barriers that affect his specific disability and therefore impinge on his individual right to fully enjoy the 7-Eleven store, the case before us presents neither abstract questions nor questions better answered by other governmental bodies. In light of Doran's personal desire to return to the 7-Eleven store and the deterrence imposed by the barriers within the store, our intervention is necessary to protect the individual rights conferred on Doran by the ADA. *See* 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. . . .").

Concerns of judicial economy properly affect our resolution of prudential standing disputes. *See, e.g.*, *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996) (noting that the prudential standing rules focus on "matters of administrative convenience and efficiency"); *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 n.6 (9th Cir. 2000). The rule proposed by 7-Eleven, permitting a plaintiff to challenge only barriers that he or she personally encountered or of which the plaintiff had first-hand knowledge, not only would invite but would require disabled plaintiffs to engage in piecemeal litigation to eliminate barriers the ADA prohibits. A thought experiment illustrates:

Suppose a wheelchair-bound person cannot access a restaurant because the restaurant has no place to park a wheelchair-accessible van and the only entry to the restaurant is up a flight of stairs. Suppose further that, inside the restaurant, an additional flight of stairs precludes wheelchair access to the dining room and that the table layout does not permit wheelchair egress. Under 7-Eleven's proposed rule, when the disabled person initially cannot enter the restaurant to encounter or gain personal knowledge of the barriers within it, the disabled person as a plaintiff does not have standing to challenge the barriers inside the restaurant. So, the disabled person sues, challenging only the barriers encountered—the lack of a parking space and the lack of an accessible entry. Victorious in that case, the disabled person parks his or her van in the restaurant's new handicapped parking space and, on a new wheelchair ramp, enters the restaurant for a meal, only to discover the accessibility problems with the internal stairs and table layout. The restaurant is still inaccessible. The parking and entry problems remedied by the prior litigation only fostered an illusion of accessibility, and the restaurant still cannot be fully enjoyed by a person in a wheelchair.

Suppose the disabled person brings a second lawsuit, and this results in removal of the inside stairs that pose a barrier. Returning to the restaurant again, in hopes of a victory meal, the disabled person now gets in the door and by a ramp or lift gets past the internal stairs, only to find that the table layout prohibits access from a wheelchair. If that problem is remedied by another lawsuit, the disabled person may still encounter another barrier, say, an inaccessible restroom that, for practical purposes, rules out his or her use of this restaurant. Under 7-Eleven's proposed rule, because the plaintiff did not encounter and could not discover[3] the internal stairs and the

[3]Under 7-Eleven's proposed rule, the disabled person would not be permitted to conduct discovery about the barriers inside the restaurant in the first case because Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to matters relevant to the claims of a party. Barriers within the restaurant would be irrelevant to a claim challenging barriers outside the restaurant.

table and restroom barriers in the first case, the plaintiff must file a succession of suits to challenge newly-encountered barriers. It might be argued that the example is somewhat exaggerated because the disabled person could perhaps get a person who was not disabled to scout out any barrier before suing, thereby giving the disabled person knowledge of the internal barriers. However, to force the disabled person's reliance on some other person is inconsistent with the ADA's goals and another person's assessment, apart from that of an expert, might be less knowledgeable about how barriers can preclude a disabled person's full use and enjoyment of a public accommodation.

This precautionary tale makes clear that a rule limiting a plaintiff to challenging the barriers he or she had encountered or personally knew about would burden businesses and other places of public accommodation with more ADA litigation, encourage piecemeal compliance with the ADA, and ultimately thwart the ADA's remedial goals of eliminating widespread discrimination against the disabled and integrating the disabled into the mainstream of American life. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001). It makes no sense to require a disabled plaintiff to challenge, in separate cases, multiple barriers in the same facility, controlled by the same entity, all related to the plaintiff's specific disability.[4] We do not believe Congress could have intended such a constricted reading of the ADA which could render the benefits it promises largely illusory. So long as there is an actual or imminent injury from a barrier encountered or about which a

---

[4]With respect, the dissent's hypothetical story about the possibility of claims against multiple shopping center establishments is fanciful and far off the mark. All that our opinion does today is to explore the scope of the Article III claims that Doran has against 7-Eleven once it violated his rights under the ADA. Our ruling does not in any way suggest that a person precluded from visiting a shopping center by lack of a disabled parking space at the shopping center could automatically have discovery against multiple establishments in the center that were not responsible for the injury to the disabled person caused by the lack of accessible parking.

person had knowledge, deterring use of the public accommo-
dation, the disabled person has standing to enter our court sys-
tem. The scope of discovery and claims should then naturally
permit challenge to any barriers to use related to that person's
disability.

[7] Prudential standing principles, practical concerns about
piecemeal litigation, and our prior endorsement of the holding
of *Steger* leads us to hold the following: An ADA plaintiff
who has encountered or has personal knowledge of at least
one barrier related to his or her disability when he or she files
a complaint, and who has been deterred from attempting to
gain access to the public accommodation because of that bar-
rier, has suffered an injury in fact for the purpose of Article
III. *Pickern*, 293 F.3d at 1138. An ADA plaintiff who has
Article III standing as a result of at least one barrier at a place
of public accommodation may, in one suit, permissibly chal-
lenge all barriers in that public accommodation that are
related to his or her specific disability. *Steger*, 228 F.3d at
894.

Although we view the issue as primarily one of prudential
standing, our holding is fully consistent with the Supreme
Court's Article III standing discourse. In *Sierra Club v. Mor-
ton*, the Supreme Court emphasized that "the 'injury in fact'
test . . . requires that the party seeking review be himself
among the injured." 405 U.S. 727, 734-35 (1972), *quoted in
Lujan*, 504 U.S. at 563. In this case, there is no doubt that
Doran is one of those injured by all of the barriers that impede
a wheelchair user's access to and full enjoyment of the North
Harbor 7-Eleven store.[5] The Supreme Court has repeatedly

_____

[5]Of course, Doran is not among the class of persons injured by ADA
violations in the 7-Eleven store that do not relate to Doran's particular
disability—that he must use a wheelchair for mobility. For that reason,
Doran cannot challenge *all* of the ADA violations in the 7-Eleven store.
For example, Doran does not have standing to challenge those barriers that
would burden or restrict access for a person who is blind. Doran may chal-
lenge only those barriers that might reasonably affect a wheelchair user's
full enjoyment of the store. *Steger*, 228 F.3d at 893.

instructed that " 'the gist of the question of standing' is whether [the plaintiff has] 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.' " *Massachusetts v. EPA*, 127 S. Ct. 1438, 1453 (2007) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Even if a disabled plaintiff did not know about certain barriers when the plaintiff first filed suit, that plaintiff will have a "personal stake in the outcome of the controversy" so long as his or her suit is limited to barriers related to that person's particular disability. *See id.*

[8] We hold that Doran has standing to sue for injunctive relief for all barriers in the North Harbor 7-Eleven store related to his specific disability, including those identified in his expert's site inspection. The district court's conclusion to the contrary was erroneous.

## III

Doran also argues that the district court erred in granting summary judgment to 7-Eleven on the issues of whether the store's aisle width and the store's refusal to allow him to access the employees-only restroom were ADA violations. We review a grant of summary judgment de novo. *Pan Pac. Retail Prop., Inc. v. Gulf Ins. Co.,* 471 F.3d 961, 965 (9th Cir. 2006). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Doran bears the burden of producing sufficient evidence to defeat summary judgment regarding each of the store's alleged ADA violations because he would bear the burden of proving such violations at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A

[9] Doran relies on two pieces of evidence to show that the store's aisle width violates the ADA. Neither raises a genuine

issue of material fact as to the width of the aisles. First, Doran relies upon the affidavit of Joseph Gengo, 7-Eleven's Division Construction Manager, in which Gengo stated "there is at least 32 inches of clear space within the aisles." Doran argues that this statement is a tacit admission that the store's aisles are less than the thirty-six inches required by the ADA Accessibility Guidelines. *See* 28 C.F.R. Ch. 1, Pt. 36, App. A, § 4.3.3 (2006). However, Gengo's statement was a response to Doran's allegation that "some aisles are less than 32 inches wide." The district court properly concluded that Gengo's statement says nothing about whether the aisles are more or less than thirty-six inches.

Second, Doran identifies his own testimony that he scraped his knuckles on the edge of the aisles while shopping as establishing a factual issue regarding the aisles' insufficient width. Doran bears the burden of showing a violation of the ADA Accessibility Guidelines, the substantive standard of ADA compliance. *See Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1129 (9th Cir. 2003). That Doran scraped his knuckles, unsupported by any measurements, is insufficient to demonstrate that 7-Eleven's aisles do not comply with the thirty-six-inch clearance that the Accessibility Guidelines mandate.

**B**

As to the grant of summary judgment to 7-Eleven regarding 7-Eleven's refusal to let Doran use the store's employees-only restroom, the district court held that the exclusion of a disabled plaintiff from an employees-only restroom does not violate the ADA. We agree.

**[10]** Title III of the ADA prohibits discrimination on the basis of disability in "any place of public accommodation." 42 U.S.C. § 12182(a). Though the retail portion of the North Harbor 7-Eleven is open to the public, the employees-only restroom is not. In such "mixed-use" facilities, where only

part of the facility is open to the public, the portion that is closed to the public is not a place of public accommodation and thus is not subject to Title III of the ADA. *See* 28 C.F.R. Ch. 1, Pt. 36, App. B at 687-88 (2006); *see also Olinger v. U.S. Golf Ass'n*, 205 F.3d 1001, 1004 (7th Cir. 2000) ("Pursuant to Justice Department regulations implementing Title III, to the extent that a mixed use facility is not open to the general public, it is not subject to the requirements for public accommodations." (internal quotation marks omitted)), *vacated on other grounds*, 532 U.S. 1064 (2001); *Jankey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 2d 1174, 1179 (C.D. Cal. 1998); *Indep. Housing Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993). The district court did not err in granting summary judgment to 7-Eleven on Doran's claim that 7-Eleven violated the ADA by excluding him from the employees-only restroom.

## IV

Doran next argues that the district court erred in declining supplemental jurisdiction over his California law claims after it eliminated his ADA claims at summary judgment. Because we have held that Doran may challenge, under the ADA, the alleged violations identified by Doran's expert, we vacate the district court's order declining supplemental jurisdiction and remand for further proceedings.

## V

In summary, we hold that the district court properly granted summary judgment to 7-Eleven on the issues of whether the store's aisle width and the store's refusal to allow him to access the employees-only restroom violated the ADA. However, we also hold that Doran had standing to challenge the barriers to his wheelchair access in the 7-Eleven store that he learned about through his expert's site inspection. Accordingly, we vacate the portion of the district court's order granting summary judgment to 7-Eleven on those claims. Because

those alleged ADA violations may give rise to a justiciable dispute between Doran and 7-Eleven, we also vacate the district court's order declining supplemental jurisdiction, and we remand the case for further proceedings. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

DUFFY, District Judge, dissenting:

I respectfully dissent.

Today the majority holds that an ADA plaintiff has standing to sue for things that did not injure him. In holding that a plaintiff who has encountered or has specific knowledge of one barrier at a facility may sue for any unknown barrier on the premises related to his disability, the majority reasons that "[i]t makes no sense to require a disabled plaintiff to challenge, in separate cases, multiple barriers in the same facility, controlled by the same entity, all related to the plaintiff's specific disability. We do not believe Congress would have intended such a constricted reading of the ADA which could render the benefits it promises largely illusory." The majority's approach compromises longstanding constitutional principles for the sake of convenience, and ignores the fact that no one—not even Congress—can preempt the Constitution and confer standing to a party for things that have not injured him.

A plaintiff who seeks federal jurisdiction bears the burden of proving that he has standing to pursue his claims in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Doran has fallen short of meeting this burden. As the Supreme Court has held, to establish standing:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical' ". Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560-561 (internal citations omitted). The elements of standing are not mere pleading requirements, but rather must be supported by sufficient evidence. *Id.* at 561.

Importantly, standing requires that "the party seeking review be himself among the injured." *Id.* at 563. To establish that the plaintiff suffered an injury in fact, it must be "concrete and particularized," which requires that "the injury must affect the plaintiff in a personal and individual way." *Id.* at 561 n.1. The result of this requirement is that the individual plaintiff, and not some other hypothetical disabled person, must have been injured by the alleged ADA violation. *See Lewis v. Casey*, 518 U.S. 343, 358, n.6 (1996) ("[S]tanding is not dispensed in gross."). Taking these principles into account, a plaintiff should not be able to get his nose in the door of federal court with one alleged statutory violation and then sue for countless other alleged statutory violations that have in no way affected him.

As the majority offers a hypothetical story as a point of illustration, it seems appropriate to do the same in order to emphasize the far-reaching implications of the holding today. Imagine that a mobility-impaired person decides to spend the day at a large shopping center that contains, among other things, restaurants, shops, a movie theater, and a health spa.

He is not planning on doing anything in particular, but in the past he has enjoyed browsing in the shops, and hopes to dine at one of the many restaurants in the evening. He also would like to see one of the movies playing at the theater if anything piques his interest. Much to his chagrin, however, upon his arrival at the shopping center he discovers that there are no handicapped parking spots and he is therefore unable to park his van. At this point, it is beyond question that the plaintiff has, in fact, suffered a cognizable injury in fact pursuant to the ADA.

Seeing the error of its ways, the shopping center quickly rectifies the problem. However, in the meantime the plaintiff's expert clandestinely examines all areas of the center, and identifies hundreds of other ADA violations that could hypothetically affect a mobility-impaired person throughout, none of which the plaintiff encountered or had knowledge of at the time the complaint was filed. Based on the majority's holding, the scope of the violations for which the plaintiff is able to sue is arguably boundless. The plaintiff's lawyers will argue that they are not limited to the common areas, but are able to sue all of the establishments in the shopping center that present hypothetical injuries to the plaintiff. Difficult questions inevitably arise: should plaintiff's standing extend to all of the shops he planned on patronizing, and to the movie theater where he might have seen a movie? Does it extend to the health spa, where he had no plans of going that day but has a membership? What about the stores he has never been to before, but he might have stumbled upon in the course of his outing? Moreover, what mechanism is in place to substantiate the claims of a plaintiff in this position regarding the establishments he intended to patronize or plans to visit in the future?[6]

---

[6]The variations on this theme are endless. What is the potential scope of injuries relating to a mobility-impaired job applicant whose wheelchair gets caught on a mat in the lobby of a large office building, or a blind high school student on a campus tour of a prospective college who encounters an elevator in the main building without the required signage? May the job

Standing is indispensable; it cannot be disregarded because it is inefficient, or because to do otherwise might, as the majority opines, not pragmatically "make sense." *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[Standing is] the threshold question in every federal case, determining the power of the court to entertain the suit."). The majority's position loses the forest for the trees. Generally, standing requirements actually enhance efficiency by concentrating limited judicial resources on controversies as to those who have actually suffered injuries. Instead, the majority's approach gives ADA plaintiffs a carte blanche, an invitation to bring litigation even outside the presence of a real live case or controversy. *See, e.g. Martinez v. Longs Drug Stores*, No. CIVS-03-1843DFL CMK, 2005 WL 2072013 at *4 (E.D. Cal., Aug. 25, 2005) ("[t]he court's resources are best spent resolving real issues that have affected real people at the present time rather than reaching out to decide matters that may not affect anyone or that may be resolved without judicial action."). I can think of no other area of the law where we bestow a plaintiff with the right to assert any potential injuries he may suffer at the hands of the defendant at some future time. *See, e.g., Lewis*, 518 U.S. at 358 n.6 ("if the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. This of course is not the law.").

The majority's holding is premised on the Eighth Circuit decision *Steger v. Franco*, which allows for an ADA plaintiff

---

applicant now sue for all unknown violations at every place of public accommodation throughout the entire building? May the student sue the college for violations relating to his disability that exist in all of the school's buildings, even ones that are located on a separate campus across town? In my mind, *any* liberalization of the injury in fact requirement is unacceptable. One can only imagine the avalanche of litigation that today's holding has the potential to generate.

to sue for all violations pertaining to his disability regardless of whether he encountered or knew about them. *See Steger v. Franco*, 228 F.3d 889, 894 (8th Cir. 2000).[7] Some of the wording in *Steger*, however, is "fundamentally incompatible" with established constitutional standing principles. *See Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134 (S.D. Cal. 2000). To allow a plaintiff to sue for ADA violations he neither knew about nor encountered directly flies in the face of *Lujan*'s requirement that "the injury must affect the plaintiff in a personal and individualized way." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 n.1 (1992). The approach advanced in *Steger* has been the subject of criticism, both by the dissenting judge in *Steger*, *see Steger*, 228 F.3d at 894-96 (Loken, J., dissenting) as well as district courts within the Ninth Circuit, *see Hubbard v. 7-Eleven*, 433 F. Supp. 2d 1134, 1142 (S.D. Cal. 2006); *Harris v. Costco Wholesale Corp.*, 389 F. Supp. 2d 1244, 1249 (S.D. Cal. 2005); *Wilson v. Norbreck, LLP*, No. CIVS040690DFLJFM, 2005 WL 3439714, at *1 (E.D. Cal, Dec. 14, 2005); *White v. Divine Investments, Inc.*, No. Civ.S-04-0206FCD/DA, 2005 WL 2491543 at *3-4 (E.D. Cal. Oct. 7, 2005); *Org. For Advancement of Minorities v. Brick Oven Restaurant*, 406 F. Supp.2d 1120, 1126 (S.D. Cal. 2005); *Martinez v. Longs Drug Stores*, No. CIVS-03-1843DFL CMK, 2005 WL 2072013 at *3-5 (E.D. Cal., Aug. 25, 2005).

The majority's reliance on *Pickern v. Holiday Quality Foods*, 293 F.3d 1133 (9th Cir. 2002) is also misplaced. While *Pickern* did engage in a discussion of *Steger*, its reference to the Eighth Circuit's holding was a limited one. *Pickern* merely holds that an ADA plaintiff who has actual knowledge of illegal barriers and has been deterred by them may seek relief for their removal, even if he has not person-

---

[7]Despite the liberal holding in *Steger*, it is worth noting that the cases of four out of the five plaintiffs in that case were dismissed for failure to establish standing.

ally encountered them.[8] *Pickern* did not address the issue of whether a plaintiff who knows about or encountered one or even several illegal barriers has standing to sue for all illegal barriers related to his disability within that facility. I think Appellant's brief says it best: "[i]f Doran were arguing that he was denied full and equal enjoyment of the store, then the district court would be correct: an individual can hardly complain about unknown discriminatory acts. To hold otherwise would allow disabled plaintiffs to sue without having suffered the (minimal) injury-in-fact required under the ADA, and eviscerate the Article III constraints imposed by Congress." *See* Appellant's Opening Brief at 28. Though I remain puzzled as to why plaintiff-appellant's own brief would contain this language, I think he hits the nail on the head.

Although one might argue that *Steger* has pragmatic appeal, when it comes to abiding by the Constitution, the fact that adherence to it might be inefficient or impractical is simply not enough to preempt its force. Time and again, the Supreme Court has refused to allow the arguments of "piecemeal litigation" or "convenience and efficiency" to negate the fundamental, constitutional requirement that plaintiffs present an actual case or controversy in order to have Article III standing. *Raines v. Byrd*, 521 U.S. 811, 820 (1997) ("[i]n the light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of this important dispute and to 'settle' it for the sake of convenience and efficiency"); *Lewis v. Casey*, 518 U.S. 343, 358, n.6 (1996).

It goes without saying that convenience does not, or at least should not, play a role in our adherence to the Constitution.

---

[8]It is of interest that the one plaintiff-appellant in *Pickern* apparently is the same person who is the plaintiff-appellant here. Counsel in this case claims to have been counsel in the *Pickern* case.

I am reluctant to contemplate the potential far-reaching implications of the majority's holding.

Accordingly, I dissent.